UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SYLVIA J. MILENBAUGH,

    Plaintiff,

vs.                                              Case No.  3:05-cv-83-J-MCR

JO ANNE B.  BARNHART,
Commissioner of Social Security,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**

**THIS CAUSE** is before the Court on Plaintiff Sylvia Milenbaugh's Complaint (Doc. 1), seeking judicial review of an administrative decision denying her application for Social Security benefits.[1] The Court has thoroughly reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively applied for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on June 7, 2002, alleging she became unable to work on January 1, 2002.  (Tr. 44).  The Social Security Administration denied Plaintiff's claims initially and upon reconsideration.  (Tr. 22-23). Plaintiff filed a timely request for a hearing on the matter.  (Tr. 32).  Plaintiff's request

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Doc. 7.

was granted and a hearing was conducted by an administrative law judge ("ALJ") on June 1, 2004. (Tr. 230-254).

The ALJ issued a decision on July 30, 2004, concluding that Plaintiff was not disabled within the meaning of the Social Security Act and therefore, not entitled to a period of disability, DIB or SSI. (Tr. 10-21). Plaintiff filed a timely request for review by the Appeals Council, which was denied on November 26, 2004. (Tr. 9, 5-7). Consequently, the ALJ's July 30, 2004 decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.955, 404.981. After exhausting all administrative remedies, Plaintiff filed her timely Complaint in the United States District Court on January 26, 2005. (Doc. 1). Accordingly, the matter is now ripe for judicial review.

## II. NATURE OF CLAIMED DISABILITY

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since January 1, 2002, due to nerves, high blood pressure, arthritis and sciatic nerve. (Tr. 55).

### B. Summary of Evidence Before the ALJ

Plaintiff was 53 years of age at the time the ALJ conducted the administrative hearing. (Tr. 253). Plaintiff possesses the equivalent of a high school education. (Tr. 61, 234). Her past work includes employment as a bartender and sewing-machine operator. (Tr. 56, 104-107). Plaintiff asserts she became disabled on January 1, 2002 due to nerves, high blood pressure, arthritis, and sciatic nerve. (Tr. 54-63).

In his decision, the ALJ provided a detailed account of Plaintiff's medical records. As this appeal deals only with Plaintiff's mental impairments, the Court will limit its

discussion to the medical evidence regarding Plaintiff's mental impairments.  In sum, Plaintiff alleges depression and anxiety, since she ceased working full-time in 1990. Plaintiff states she is only able to sleep three hours a night, and she is constantly irritable.  (Tr. 73, 75-76).  She has occasional crying spells and feels shaky inside.  (Tr. 75-76).  She also asserts an inability to concentrate.  (Tr. 80).  Two of Plaintiff's friends and her daughter completed questionnaires about Plaintiff's anxiety/depression and noted that Plaintiff had difficulty remembering things and concentrating.  (Tr. 87-103).

On January 5, 2001, Plaintiff consulted her primary care provider, alleging anxiety symptoms and insomnia.  (Tr. 172).  Plaintiff was prescribed Xanax and Prozac. (Tr. 147, 205).  Plaintiff was diagnosed with prolonged depression reaction on October 14, 2002.  (Tr. 224).

On September 12, 2002, Plaintiff underwent a consultative examination by Denise Verones, Ph.D.  Plaintiff reported the ability to perform housework, cook her own meals, watch television, go outside for fresh air, and enjoy reading.  (Tr. 119-122). Plaintiff did not socialize much and Dr. Verones noticed that she appeared anxious and depressed.  (Tr. 119-122).  Dr. Verones described Plaintiff's thought processes as "logical or coherent," and found Plaintiff to be "oriented to person, place, and time."  (Tr. 120).  Dr. Verones also noted Plaintiff's recent and remote memory was intact, her judgment adequate and insight fair.  (Tr. 121).  Dr. Verones assigned Plaintiff a GAF of

50.[2] Id. Dr. Verones diagnosed Plaintiff with Generalized Anxiety Disorder and Dysthymic Disorder. Id.

On September 20, 2002, Susan Conley, Ph.D. a state agency medical consultant completed a Psychiatric Review Technique form ("PRTF") on Plaintiff. (Tr. 131-144). Dr. Conley determined that Plaintiff's Dysthymia and Generalized Anxiety Disorder did not constitute a severe impairment because it resulted:

> only in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild deficiencies in concentration, persistence, or pace; and no episodes of decompensation, each of extended duration.

(Tr. 141).

On December 24, 2002, a second state agency medical consultant, Michael Zelenka, Ph.D., completed another PRTF and determined Plaintiff had the following limitations: mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation, each of extended duration. (Tr. 189).

Dr. Zelenka also completed a mental RFC for Plaintiff in which he found she had moderate limitations in her ability to understand, remember and carry out detailed

---

[2] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32 (4th ed. 1994). A GAF code of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers or co-workers). Id. at 32. A GAF code of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), OR serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job). Id.

instructions; to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 196-97). Dr. Zelenka opined that Plaintiff retained adequate mental ability to carry out simple instructions and relate appropriately to others in a routine work setting so long as she was given only simple instructions and some allowances for problems with attention/concentration and some psychological problems affecting her productivity. (Tr. 198).

On November 24, 2003, Plaintiff sought psychotherapy from a licensed social worker. (Tr. 207). The mental health progress notes show Plaintiff had "a pleasant and attentive behavior, normal mood, slight depression, occasional slight anxiety, appropriate affect, normal thought process, and normal thought content." (Tr. 202, 204).

### C. **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical

or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2002, the alleged onset of disability.  (Tr. 14).  At step two, among other things, the ALJ found Plaintiff suffered from "anxiety, affective disorder, arthritis, high blood pressure, and disorders of the spine."  Id.  At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  Before moving to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC").  See 20 C.F.R. § 404.1520(a)(4)(iv).

In making the RFC determination, the ALJ reviewed the medical evidence presented and found Plaintiff's testimony regarding her limitations not fully credible.  (Tr. 17).  The ALJ noted that no treating or examining doctor had concluded Plaintiff was unable to work due to her impairments.  Id.  The ALJ emphasized that Plaintiff had

actually been encouraged to increase her exercise level. Id. The ALJ also pointed out that the state agency medical consultant had found Plaintiff retained a residual functional capacity for a full range of work. Id. The ALJ discounted Dr. Verones's statement that Plaintiff could not return to her previous work as a sewing machine operator but agreed with her statement that Plaintiff's anxiety and depression were significant enough to hinder Plaintiff's productivity at work. Id. However, the ALJ interpreted Dr. Verones's statement regarding Plaintiff's productivity to mean that "if the claimant would be exposed to unusual stress, she would have difficulty performing her job tasks." Id. Additionally, the ALJ noted that Plaintiff's statements regarding her level of pain were inconsistent. Id. As such, the ALJ determined Plaintiff retained the RFC for light work that required standing for no more than thirty minutes at a time and then the ability to sit for thirty minutes; only occasional bending, crouching, kneeling, stooping, squatting, crawling; no exposure to ladders, unprotected heights, operation of heavy moving machinery; and avoidance of unusual stress. (Tr. 18).

At step four, the ALJ found Plaintiff's impairments precluded her from doing her past relevant work. At step five, through the aid of a vocational expert ("VE"), the ALJ found Plaintiff's impairments did not prevent her from doing other work existing in the national economy. (Tr. 19).

## III. STANDARDS OF LAW

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV. ANALYSIS

Plaintiff argues several interrelated issues on appeal. First, Plaintiff argues the ALJ erred by not including his determination that Plaintiff was limited by "moderate difficulty in the domain of concentration, persistence, or pace" in the RFC and hypothetical posed to the VE. (Doc. 13, p. 1). Additionally, Plaintiff argues that the ALJ incorrectly interpreted statements made by examining psychologist, Dr. Denise Verones, Ph.D. (Doc. 13, pp.1-2). Specifically, Plaintiff contends the ALJ's finding that she was limited to low stress work was not adequate in light of Dr. Verones' statement that Plaintiff's anxiety and depression might limit her productivity. (Doc. 13, pp.1-2, Tr. 122).

In response, the Commissioner argues the ALJ's findings are supported by substantial evidence. The Commissioner contends that the findings from the psychiatric review technique do not represent an assessment of Plaintiff's RFC, and as such, the ALJ is not required to include these findings in his RFC or in the hypothetical question posed to the VE. (Doc. 15, pp.7-8). The Commissioner further alleges that, pursuant to all applicable Regulations and in accordance with Eleventh Circuit case law, the ALJ properly considered Dr. Verones' opinion along with the record as a whole. (Doc. 15, pp. 10-12).

In his decision, based on the PRTFs completed by the state agency medical consultants, the ALJ found Plaintiff's mental impairment would result "in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation

each of extended duration." (Tr. 16).  Plaintiff claims the ALJ erred by failing to include the moderate limitation in concentration, persistence or pace in either the RFC finding or the hypothetical posed to the VE.

The ALJ found Plaintiff retained the RFC to perform light work that required standing for no more than thirty minutes at a time and then the ability to sit for thirty minutes; only occasional bending, crouching, kneeling, stooping, squatting, crawling; no exposure to ladders, unprotected heights, operation of heavy moving machinery; and avoidance of unusual stress.  (Tr. 18).  The hypothetical question presented to the VE by the ALJ sets forth as follows:

> [a]ssume I find that the claimant is 53 years old, has a GED. Assume further that I find that she could perform light work, but is further limited by the following exertional and non exertional impairments.  She needs to avoid ladders and unprotected heights.  She needs to avoid the operation of any heavy moving machinery.  She needs to avoid unusual stress.  She can only occasionally bend, stoop, crawl, kneel or crouch, and she needs a sit/stand option.

(Tr. 249-50).

The Commissioner responds to Plaintiff's argument by taking the position that the ALJ is not required to include his finding regarding a moderate limitation at steps four and five of the sequential analysis.  (Doc. 15, pp. 7-8).  Instead, the Commissioner argues the finding regarding Plaintiff's moderate limitation in concentration, persistence or pace is only to be used in the ALJ's analysis at steps two and three of the five-step evaluation.  Id.  The Court agrees with the Commissioner that the ALJ need not utilize the exact language used in the PRTF at steps four and five, however, both the RFC and the hypothetical posed to the VE must include reference to all of a claimant's limitations.

The Court notes that SSR 96-8p states psychiatric review technique findings are not an RFC assessment "but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." However SSR 96-8 further provides that the mental RFC assessment at steps 4 and 5 "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments and summarized on the PRTF."  SSR 96-8p.

Here, the ALJ's finding that Plaintiff had a moderate limitation in the domain of concentration, persistence or pace was based on the PRTFs completed by the state agency medical consultants.  (Tr. 16, 131-44, 183-95).  The RFC and the hypothetical posed by the ALJ do not specifically refer to a moderate limitation on concentration, persistence or pace.  Instead, the RFC and hypothetical note Plaintiff's need to avoid unusual stress.

RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite the claimant's impairments.  20 C.F.R. §404.1545(a); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).  The evaluation of RFC with regard to mental disorders includes consideration of the ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and customary work pressures in a work setting.  20 C.F.R. §404,1545(c); SSR 85-16.  The determination of mental RFC involves the consideration of evidence from medical sources, reports of the individual's activities of daily living and work activities and reports of third parties.  SSR 85-16.  In analyzing the evidence, meaningful inferences

and reasonable conclusions about the claimant's strengths and weaknesses should be drawn by considering: quality of daily activities; the claimant's actions with respect to medical examinations; the ability to sustain activities, interests, and relate to others over a period of time; the level of intellectual functioning and ability to function in a work-like situation. Id.

Likewise the hypothetical question presented to the VE must comprehensively describe the Plaintiff's limitations in order to prove the existence of alternative work for the Plaintiff. Welch v. Bowen, 854 F.2d 436, 440 (11th Cir. 1988); McSwain v. Bowen, 814 F.2d 617, 619-620 (11th Cir.1987); Pendley v. Heckler, 767 F.2d 1561, 1562-1562 (11th Cir. 1985). In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. See McSwain, 814 F.2d at 619-620.

Here, in determining Plaintiff's mental RFC, the ALJ specifically discounted Plaintiff's credibility regarding her claims of having difficulty concentrating. (Tr. 18). In so doing, the ALJ noted that the mental status evaluation performed by Dr. Verones did not reveal any abnormality with concentration, memory, thought process or thought content. Id. Additionally, the ALJ referenced Dr. Pulwers's opinion that Plaintiff had normal concentration, memory and cognition.[3] Id. Finally, the ALJ pointed to the

---

[3] Dr. Pulwers was conducting a physical examination of Plaintiff regarding her complaints of pain. (Tr. 114-18). He was not expected to nor did he provide any opinions regarding Plaintiff's mental impairments.

-12-

psychotherapy progress notes, which he claims support a finding that Plaintiff had no problems with concentration.[4] Id.

The ALJ, however, failed to consider or even mention contrary evidence such as Dr. Zelenka's Mental RFC where he suggested that Plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 196-97). Additionally, Dr. Zelenka noted that Plaintiff retained adequate mental ability to carry out simple instructions and relate appropriately to others in a routine work setting so long as she was given only simple instructions and some allowances for problems with attention/concentration and some psychological problems affecting her productivity. (Tr. 198). The ALJ did not reference this information even though he clearly found Dr. Zelenka's PRTF credible and adopted it in his findings. (Tr. 16). Additionally, the ALJ did not reference the reports completed by Plaintiff's friends and daughter revealing her difficulty in concentration. (Tr. 87-103).

As noted above, the ALJ is supposed to consider such evidence in making his mental RFC determination. See SSR 85-16. As it is not at all clear that the ALJ considered this evidence, the undersigned believes it is appropriate to remand the case to the ALJ to do so and to re-assess Plaintiff's mental RFC. If the ALJ elects to reject

---

[4] The ALJ is correct that these records do not indicate any problems in concentration, however, they simply consist of a check-mark on the word "attentive." (Tr. 202, 204).

any of the evidence regarding Plaintiff's mental RFC, he is directed to provide specific reasons for doing so.  Additionally, as the Court has already noted, SSR 96-8p requires the ALJ to consider the limitations summarized on the PRTF and to conduct a more detailed assessment of Plaintiff's mental impairments in determining the mental RFC. The Court is not clear as to how the ALJ determined Plaintiff's mental impairments required her to simply avoid unusual stress.  On remand, the ALJ should ensure that the RFC reflects his finding that Plaintiff has a moderate limitation in concentration, persistence or pace or at least explain how avoidance of unusual stress accommodates such a limitation.

The ALJ should also ensure the hypothetical he poses to the VE accurately represents the limitations suggested by the PRTF.  The ALJ is not required to use the specific language of the PRTF, however, he must pose a hypothetical that clearly incorporates all of Plaintiff's limitations.

## IV. CONCLUSION

For the foregoing reasons, the undersigned believes the Commissioner's decision is not supported by substantial evidence and is therefore **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall (1) assess Plaintiff's mental RFC according to SSR 96-8p, which requires the ALJ to consider the limitations summarized on the PRTF, (2) propound a hypothetical to a vocational expert that clearly sets out all of Plaintiff's limitations and (3) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  28th  day of March, 2006.

_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record